So we're going to reconvene. You may be seated. First case in the afternoon is in re Estate of Krohe. Is that the right pronunciation? And for the appellate Mr. Thomas, for the appellate Mr. Kessinger, you may proceed. May it please the court and opposing counsel. I have four main issues and several sub issues. I hope to address today as to why we believe the trial court should be reversed. First, we believe the trial court did not require the plaintiff to meet the appropriate burden of proof on its claim. Secondly, we believe the defendant's motion for judgment at the close of plaintiff's evidence should have been granted. Likewise, at the close of all evidence, we believe the trial court should have entered judgment in favor of the defendants based on the lack of admissible evidence introduced by the plaintiff in support of its claim. To the contrary, we believe that there was convincing evidence as to why setting aside the conveyance to these defendants was improper. Lastly, intertwined with these arguments are procedural and statutorial reasons. We believe plaintiff's claim was barred, perhaps even from the onset. As to the first issue, I urge to the trial court that plaintiff presented no evidence that divesting all defendants other than Marvin Croy Sr. was appropriate and that plaintiff's evidence as to Marvin Croy Sr. fell far short of providing the court with clear and convincing evidence that rescission was appropriate. This can be found at page 49 of volume 10 of the record. Despite this, when the trial court denied our motion for judgment at the close of plaintiff's evidence, and again in its written order, to say to plaintiff that it's burdened by preponderance of the evidence. Now, preparing for today, going through all of my notes and everything and looking at our brief, I acknowledge that we did not inform the trial court with the degree of specificity perhaps we should have as to the burden of proof and even probably perhaps didn't cover it as strongly as we should have in our brief. But I nonetheless believe we did cover it sufficiently in our brief and raise it so as not to waive that argument on appeal. We also believe that that issue can be considered by this court regardless on its own merit. Now we provide the trial court the standard by which it was to consider our motion for judgment at the close of plaintiff's evidence. That was that plaintiff provide at least some evidence on each element of its claim. And secondly, the plaintiff carry its ultimate burden of providing the court with clear and convincing evidence that rescission was appropriate. Now plaintiff has provided several motions to dismiss throughout the history of this case, even before this court in 2010 stating that it could state a claim for rescission as a matter of law. To get to that point, plaintiff alleged fraud in procuring the deed and its complaints. It alleged that the property is worth five times that which the defendants were to pay for in its complaint. I believe specifically they said the property is worth $270,000 and this court in its opinion referenced that the property may have been approaching $300,000. That could at least be inferred. That was not a finding of fact by this court. It also alleged that plaintiff are the defendants engaged in fraud and conveying the property to their children who were then named as co-defendants. Yet at trial, the plaintiff presented no evidence, absolutely no evidence as to the value of the property. It provided no evidence as to fraud and in fact in its brief acknowledges fraud is not even part of its claim on appeal. It waives that argument. And it provided no evidence of fraud that the deed from the original two defendants to their children was in an attempt to defraud the court or to slow the process down. Perhaps the plaintiff was taken a bit by surprise when its own witnesses acknowledged that Mr. Croy, Marvin Croy openly discussed owning the property well in advance of his mother's death. They acknowledged that there was a conversation had about six months prior to her death that Marvin stated he owned the property and that was known to the children. Yet plaintiff in its complaint states that that fact was hidden from everybody until he recorded the deed after his mother's passing. So that even goes against what they've alleged in their complaint. We believe because it failed to provide the trial court with any evidence in support of its claim, it's taken somewhat of a new position on appeal. That is that any plaintiff, as long as there's non-payment, any plaintiff can elect at any time to rescind a contract even if there's an adequate remedy of law. Here the trial court had no evidence, no information to determine whether there's adequate remedy of the law because there is no evidence as to the value of the property. Was $48,000 sufficient for the value of the property? Was it wholly insufficient? We don't know that or the trial court didn't know that because it didn't have the admissible evidence before to make that determination and shouldn't have considered any other matters including plaintiff's arguments that it attempts to make on appeal. We in fact believe that we shouldn't even got to the point at that point of considering rescission because plaintiff did in fact have an adequate remedy of law. It contends that there was a sales agreement or a contract provided for a specific dollar amount to be paid and there's been no showing that that was insufficient. So we believe that was a reason for the court to not grant rescission. Secondly, we believe that a plaintiff cannot thwart the compliance with the contract that is in this case refused to accept tender of the purchase price not once but twice in favor of going forward with the rescission claim. Now we have regretfully of record a settlement proposal that defendant tried to, or plaintiff tried to back case, this court appropriately stricken for the record, that there was a settlement offer. But again, on October 30th of 2014, plaintiff through its counsel admitted that there were two tenders of the purchase price, the complete contract price to plaintiff, but that didn't matter. That it could elect and as a contensarian elect to proceed on rescission at any time. Again, we believe that light bulb came on after trial when they tried to use a settlement proposal to show that it wasn't a complete tender and they make that argument on appeal. Despite our motion to strike that evidence or that attempt to bring that in, the trial court didn't address that. The trial court instead stated now has more information before it and went on to reason what the trial court believes is a tender or not a tender. Plaintiff was represented by counsel. It knows what a that's a tender and knows it when it tells the defendant that a tender has been made. So I don't know how you can proceed to trial with that fact taken out of contention than expect defendants to come in after the trial is completed to provide evidence to the court that, in fact, the tender didn't take place or the tender took place. So I think that issue, the trial court made a complete error in that reason. Next on appeal, we contend that the plaintiff concedes that the defendants had record title of the property and paid the taxes for some 16 years back from 1999 to 2015. It further acknowledged through its trust officer and on appeal that it made no attempt to pay the taxes itself and it made no request to pay the taxes. It took no steps to join the defendants for paying the taxes. In fact, the whole while they let defendants occupy the property and they let defendants pay the taxes on it. In that regard, we believe that Article 19.109 applies to this case and that plaintiffs had paid taxes while claiming ownership of record for at least 7 years. I think that takes the issue out of contention or the sales agreement becomes irrelevant at that point. I think that in and of itself best title in these defendants. And again, plaintiff does not attempt to rebut that on this appeal. We have several other reasons we've raised as to the various statutes of limitations we believe were applicable and why plaintiff's claim was barred from the onset. I feel we've covered those reasons sufficiently in our brief and I won't try to address those today. Thank you. Thank you. Mr. Thomas and I chatted before we came here. It seems like an almost impossible task to try to sum up a case like the one in Cook County. But actually this case is even older because there were litigation from at least 2000 to 2006. So it's been around a long time. I'll try to make sense of it in a few minutes. The court should know that really when you take away all the trappings of this case, it's really quite simple. A son entered into an agreement with his five other siblings, by the way, the son was the oldest, that he should buy the family farm, 120 acres, a lot of it sand, but 80 acres or so was tillable, still good land, for the sum of $48,000. 1998. He put together the agreement. He decided the terms and everything. And he also agreed to pay this $20,000 down payment and then to pay 10 annual payments of principal interest amounting to about $3,800 per year. The land was put in a conservation program. So there was actually income of about $4,400 a month from the ARC, U.S. government. There was discussions a few months after that agreement was made, which was overheard by his siblings and others. But then about a year later, his mother died. The problem is that Mr. Croy, who made this agreement, a very good agreement from his point of view, did not make the $20,000 down payment, nor did he ever make any of the 10 installment payments. So basically it's a breach of an agreement. As far as timing and all, the lawsuit was filed in 2006. So it was well within the 10-year statute for enforcing the agreement in writing. Actually, there were two other lawsuits, but it was involving, one was a daughter trying to be an administrator and sued. It was a very similar lawsuit, but it was felt it was a conflict of interest. Eventually, that's why we got to the administrator being a bank, the first pharmaceutical bank of Mount Sterling. And that's when I came into it in 2008. Another attorney, David Liefers, handled it in 2006. But in any lawsuits involved seeking money damages or the alternative, recision. The judge was Judge Alan Tucker, a very able judge out of Havana. And he heard all the evidence, of course. He was the man right there hearing all the evidence. He considered our motions for summary judgment beforehand. He considered a motion to dismiss based on some of the reasons that Mr. Thomas said. But he denied those motions for summary judgment and went to trial. And it was a very simple case to prove because all I had to do was to put on the fact that there was an agreement, and I agreed to that, and no payments were made. No installment payment, no down payment. And so there was a lot of verbiage in the complaint about fraud, undervalued property and all that. That's typical when we file a lawsuit, we put in everything we can. But as I got into the lawsuit, I realized it was just a simple breach of contract. And it was, and I saw it very early on, even before I got into the case, that it was a perfect case for recision. Because there was no, the parties could be put back to the original position. The mother, now the administrator, had received nothing. So there was nothing to give back. There was no partial payment even. Mr. Troy had the deed, and he got the deed on the day that the contract was formed, signed. And he'd had the property for the whole time. He was collecting the ARC payments, and he was paying the taxes, but he owned it. The argument that suggests that the administrator should have been paying the taxes, they didn't own it. And they didn't even come into the picture until about 2006. So there's no, certainly the administrator was not negligent in that, in regard to that. Actually, Mr. Troy had the monies from the ARC payments, which were more than the payments he could have paid for. But he didn't. So it was a perfect case for recision, and that's why I proceeded to do that. The original trial judge, Judge Greenlee, ruled in favor of Mr. Thomas that I failed to state a cause of action, because I changed the remedy. There was a commitment I had to make in order for the judge to allow me to go forward to abandon seeking money damages. And I didn't want to do the recision. And so the judge later ruled that I didn't say that it was a cause of action, because I changed remedies. And so that came up on this court appeal in 2010. They ruled in favor of my side. So that would be back another six years of litigation. In any event, I'll hit very quickly on some of the points that ought to be made by Mr. Thomas. One is that he argues that there was a tender that I admitted, and other attorneys admitted, that there was a tender of the purchase price. First of all, the judge heard the evidence, and he found no evidence of any legal tender. All it was was offers to settle back and was, there was no evidence submitted by Mr. Thomas of the amount, which generally a tender, the principle and the interest and the cost. There was no evidence. So the judge took a look at the record, and he could see also that there was no tender to the circuit clerk. And he correctly ruled that there was no tender. So it's as simple as that. Now, as to the suggestion that the administrator should have been paying bills and taxes and all that. It was also suggested the brief that the administrator didn't show good faith, was guilty of malfeasance, but not suing some of the other siblings. The mother apparently had loaned money to some of the other siblings, almost all of them, except one. And there was no attempt to collect those. But they were all oral agreements. And the time the administrator got the case, five years had gone by. That's a limitation for enforcing oral agreements. So certainly the administrator has acted properly through all phases of this. The allegation or the suggestion that we didn't prove fraud or that the property was undervalued and all that is irrelevant. We didn't care. We knew that it was worth more than the $48,000, but that didn't make any difference. We just had to show that he didn't make any payments. And the real question should be to Mr. Troy is, why do you think you should become the sole owner of this property when you failed to make a down payment or any payment of principal and interest? And he could not do that. And that's what Judge Tucker found, that he totally breached his agreement. And the parties could be put back in their original position. In fact, Mr. Troy made money because he collected about $44,000 in his ARC payments. And so it's a fairly simple case when you look at it. It's simply the man didn't pay for what he bargained for. And he made up the agreement. He even came up with the purchase notice. So if you look at this in the whole, you'll see that Judge Tucker ruled correctly. He ruled on the evidence. He was there. He's got a lot of discretion. You know that. You're all judges. You know your... You know, I say, does the judge have a right to do that? I say, yes, you have a right to do anything he wants. It's subject to review by you, three judges, and others. Were you obligated to prove that there was no that part of rescission? I certainly... Well, rescission is an equitable remedy. Right. If it's a breach, and it's a breach of a contract, why should there be rescission unless you can show there's no adequate remedy at law? Right. And that's why I did retain the services of an appraiser, showed the property was about $300,000, and showed that... Would that be relevant to what it was worth when the agreement was entered into? Well... I mean, the value of the land at the time, that's what would show... Right. Yeah. And at the time, yes, I think... Well, one of the things that put me onto this case real quickly was, and this property was $9,899, and I happened to... In Morton County, I purchased farmland at the same time at many times more money than that, so I knew it was underpriced. But yes, we produced evidence to show that it was very underpriced. But we didn't care for the purpose of that. We just wanted it back. And the judge agreed. He had that discretion. He understood it. He did not abuse his discretion. Thank you. Thank you, counsel. Rebuttal? First, to address the Court's last point, there was no evidence presented to the trial court at trial of the value of the property. It's correct that... The value of the property at the time... At the time of... The sale. The sale. Likewise, plaintiff attached to its complaint, its unverified complaint, which we contended was improper, a written appraisal, performed by a Deborah Lewis. We had filed a motion to strike that from there. Ms. Lewis and plaintiffs could have called Ms. Lewis at trial subject to cross-examination. They could have introduced the appraisal through Ms. Lewis, elected not to. So the trial court didn't have that property before, so that shouldn't be and wouldn't be considered by... And that was an appraisal closer to the time of the trial. Correct. I believe that was a 2007 or 2008 appraisal. Likewise, to quote Mr. Kessinger from that October 10, 2014 hearing, he states, Your Honor, as to the argument they tendered the contract amount owed 10 years later to me is true, but we chose not to accept that. We want to rescind the contract. And two years before that, they say they tendered. David Leepers was the attorney, and he too rejected it. I don't know how the defendant would think it has to come to trial to prove that it tendered when that's the admission of plaintiff to the court. And that was the only evidence before the trial court that was proper. So that issue was taken off by plaintiff's admission. Also, in order to show for rescission, there has to be... The breach has to be so substantial that the party seeking rescission would not have entered into the agreement but for that condition to take place. Here, the evidence presented was that the and good health at the time she entered into the transaction, and that stayed true all the way through up until her death. We contend that the plaintiff's own witnesses testified they too had loans with the decedent and had plaintiff not, or had that down payment and those payments been so important to the decedent, she could have elected not to have signed the deed. She could have taken steps to rescind or to set aside the deed during over a year between the deed being signed and her passing. In all of my research, all the cases state that that's a person... To set aside a deed is personal to the grantor that is not available to the heirs or administrators of the decedent. And there were only two cases I came across where an administrator was allowed to pursue that, and the reasons why the administrator was allowed to pursue that is because the grantor and the decedent had either filed suit or taken steps to set aside the deed prior to their passing. So we believe that that too was yet another procedural or statutory or I guess case law reasoning why the remedy of rescission was not available to this administrator. We in fact contend that that sales agreement was no more than an unsecured note. Had it been so important to the grantor and decedent that payment be made, she could have included a reverter clause in the deed that if payment is not made by X date, the property automatically reverts back to her. Or she could have had a mortgage filed like most banks do when they loan money for the purchase price of real property. You can sell or finance sales of real property. Oftentimes there's a mortgage reported. In this case, there was no mortgage reported. And the plaintiff hasn't pled or tried to prove an equitable mortgage that would allow it to have proceeded on that theory. And there would have certainly been other defenses to the defendants had they done so.  trial court should be reversed and judgment entered in favor of the defendants. Thank you. Thank you counsel. We'll take the matter under advisement. Await the readiness of the next case.